IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

VISTA VILLAGE MHP, LLC )
and RON MORRIS, member, )
 )
                 Plaintiffs, ) TC-MD 190129N
 )
            v. )
 )
UMATILLA COUNTY ASSESSOR, )
 )
                 Defendant. ) **DECISION**

Plaintiffs appealed the 2018-19 real market values 40 manufactured homes (subject

properties) located in the Vista Village Park. A trial was held on September 24, 2019, in the

courtroom of the Oregon Tax Court. Ron Morris (Morris) appeared and testified on behalf of

Plaintiffs. Michael Verdin (Verdin) appeared and testified on behalf of Defendant. Plaintiffs'

Exhibits 1 to 4 and Defendant's Exhibits A to E were admitted by the court.[1]

## I. STATEMENT OF FACTS

The subject properties are 40 manufactured homes owned by Plaintiffs and located within

Vista Village park. There are 20 single wide homes and 20 double wide homes. (*See* Ptfs' Ex

4.) Plaintiffs purchased the subject properties between 2007 and 2017, some directly from prior

owners and some from auctions or similar distressed sales. (*See id.*) Some of the homes were

already sited in Vista Village and others were moved to Vista Village at a cost of approximately

$2,500 each. (*See, e.g., id.* at 24.) Morris remodeled many of the homes, making some or all of

the following updates: floor coverings, decks, windows, siding, paint, cabinets, and roofs. (*See*

---

[1] Defendant objected to the relevance of Plaintiffs' Exhibit 1, documenting the condition of the Vista Village Park. Defendant maintains that the park's condition relates to the real market value of the park, but not the homes within it. Plaintiffs disagree, arguing that the condition of the park explains why homes in the park sell for less than homes in other parks. The court will consider the objection in weighing the evidence.

*id.*) He testified that those updates do not last long and, especially for the homes purchased in 2007 or 2008, were nearly exhausted as of the January 1, 2018, assessment date. The homes were built between 1965 and 1995. Morris testified that the year a home was built impacts not only the condition of the home but also the quality. Home built before 1976 were not subject to Housing and Urban Development (HUD) standards and are worth less.

Specific details about each home is listed in the following chart, including Plaintiffs' requested real market values, based on a combination of Plaintiffs' purchase price,[2] updates done, moving costs, and Morris' judgment based on his market experience:

| Account | Site | Size[3] | Year built | Updates | Sale price | Sale date | Distress | 2018-19 RMV | Ptfs' RMV |
|---|---|---|---|---|---|---|---|---|---|
| 148069 | 13 | S 720sf | 1972 | Windows 2009 | $3,000 | 2009 | Default[4] | $5,280 | $2,500 |
| 146958 | 84 | S 938sf | 1978 | Roof 2018 | $3,500 | 2013 | | $7,900 | $4,000 |
| 128780 | 27 | S 980sf | 1978 | None | $1,650 | 2016 | | $8,350 | $3,000 |
| 141223 | 86 | S 959sf | 1979 | Extensive 2013 | $2,500 | 2013[5] | | $9,950 | $7,000 |
| 142386 | 3 | S 924sf | 1982 | Floor, deck 2010; roof 2013 | $1,500 | 2010 | | $9,940 | $4,000 |
| 162544 | 76 | S 980sf | 1995 | Multiple 2007 | $4,000 | 2007 | Yes | $23,180 | $8,000 |
| 162490 | 64 | S 924sf | 1975 | Multiple 2008 | $2,700 | 2008 | Yes | $10,620 | $4,000 |
| 123949 | 16 | S 924sf | 1974 | Roof 2015 | | 2008 | Default | $7,820 | $2,500 |
| 119428 | 22 | S 854sf | 1971 | Multiple 2008-09 | N/A | N/A | | $12,610 | $8,000 |
| 123970 | 57 | S 470sf | 1965 | Multiple 2012 | $500 | 2012 | | $11,360 | $3,500 |
| 146663 | 89 | S 924sf | 1975 | Multiple 2008 | $2,000 | 2008 | | $11,290 | $4,000 |
| 144896 | 59 | S 756sf | 1967 | Extensive 2013 | $925 | 2010 | | $15,730 | $4,000 |
| 147658 | 77 | S 728sf | 1981 | Multiple 2012 | $2,500 | 2012 | | $12,280 | $6,000 |
| 148071 | 80 | S 924sf | 1974 | Extensive 2012 | $2,500 | 2010 | | $10,260 | $7,000 |
| 128526 | 29 | S 840sf | 1973 | None | $3,000 | 2016 | | $7,010 | $3,000 |
| 149421 | 65 | S 924sf | 1975 | Multiple 2012 | $1,500 | 2012 | Default | $11,120 | $5,000 |
| 128633 | 60 | S 840sf | 1973 | Multiple 2013 | $2,500 | 2013 | | $15,270 | $4,000 |
| 146768 | 5 | S 784sf | 1981 | None | $2,000 | 2010 | | $8,160 | $3,000 |
| 128610 | 78 | S 672sf | 1971 | Multiple 2012 | $300 | 2012 | | $13,250 | $3,000 |

---

[2] Morris testified that there have been over 77 sales in the park since 2008 and Plaintiffs purchased over 50 of them to update and convert to rentals.

[3] "S" refers to single-wide and "D" refers to double-wide.

[4] "Price" is balance owed on default. Morris testified that he "inherited" (was assigned) nine contracts when he purchased the park in 2007 and all but one defaulted. (*See* Ptfs' Ex 2 at sale 4.) He testified that owner-carried contracts are typical because buyers cannot obtain bank financing, but the resulting sale prices and interest rates are high resulting in frequent defaults. (*See* Ptfs' Ex 2 (contract sales from Vista Village).) The sellers repossess the homes and sell them again.

[5] There was also a sale for $7,000 in 2010. (Ptf's Ex 4 at 4-3.)

| 151428 | 58 | S 576sf | 1974 | Multiple 2012 | $1,000 | 2011 | | $13,120 | $2,000 |
|---|---|---|---|---|---|---|---|---|---|
| 144663 | 41 | D 1188sf | 1984 | Moved 2008 | $3,810 | 2008 | Yes | $17,610 | $9,000 |
| 124029 | 68 | D 1344sf | 1975 | Multiple 2016 | $5,000 | 2016 | | $20,010 | $6,000 |
| 150488 | 30 | D 864sf | 1981 | Roof 2013 | $2,000 | 2008 | Default | $12,730 | $7,000 |
| 164624 | 75 | D 1120sf | 1967 | Multiple 2014 | $1 | 2012 | Dealer | $16,120 | $7,000 |
| 163651 | 91 | D 1848sf | 1980 | Moved 2010 | $7,500 | 2010 | | $24,430 | $10,000 |
| 155003 | 56 | D 1344sf | 1980 | Multiple 2007 | $5,000 | 2007 | Yes | $15,480 | $8,000 |
| 163649 | 25 | D 1200sf | 1971 | Moved 2010; extensive 2011 | $1,000 | 2010 | Dealer | $22,280 | $9,000 |
| 143516 | 17 | D 1368sf | 1982 | Multiple 2012 | $450 | 2012 | Yes | $18,550 | $8,000 |
| 149300 | 7 | D 1248sf | 1983 | None | N/A | N/A | | $14,820 | $8,000 |
| 801172 | 12 | D 1536sf | 1977 | Multiple 2008, 2012 | $6,000 | 2008 | | $20,210 | $10,000 |
| 162491 | 81 | D 1584sf | 1976 | Multiple 2008 | $3,500 | 2008 | | $20,080 | $10,000 |
| 163650 | 54 | D 1536sf | 1975 | Multiple 2010 | $1,000 | 2010 | Dealer | $22,230 | $9,000 |
| 150819 | 35 | D 1848sf | 1990 | Multiple 2017 | $1,500[6] | 2017 | | $32,230 | $10,000 |
| 163648 | 15 | D 1512sf | 1987 | Multiple 2010 | $900 | 2010 | | $20,260 | $8,000 |
| 128639 | 2 | D 1440sf | 1975 | Roof prior to sale | $10,000 | 2013 | | $15,000 | $10,000 |
| 162546 | 32 | D 1344sf | 1979 | Multiple 2008 | $5,000 | 2008 | Yes | $16,160 | $8,000 |
| 164447 | 19 | D 1064sf | 1995 | Multiple 2008 | $5,000 | 2008 | Yes | $29,970 | $12,000 |
| 128542 | 47 | D 960sf | 1973 | Multiple 2012 | $5,000 | 2012 | | $14,670 | $8,000 |
| 162545 | 31 | D 1440sf | 1981 | Multiple 2008 | $500 | 2008 | Yes | $15,690 | $7,000 |
| 146103 | 62 | D 1456sf | 1981 | None | $9,300 | 2018 | Default | $28,870 | $10,000 |

Morris testified that the subject properties' values were negatively impacted by their location in Vista Village park. It is an 18-acre site on a steep hill with some roads at a 15 percent grade. (*See* Ptfs' Ex 1 at 1-10.) The steepness of the roads makes it difficult to get in and out of the park, especially in the winter. The roads are in poor condition with potholes. Morris received an estimate of $200,000 to fix the potholes and road problems. He testified that the park is also negatively impacted by crime, citing police activity in the park from 2016 through 2019. (*Id.* at 11-23.) In Defendant's view, those issues go to the value of the park (real property) rather than the value of the homes (personal property).

/ / /

/ / /

/ / /

---

[6] Morris testified that this property was on the market for 10 months asking a price of $10,000.

Plaintiffs rent the subject properties to tenants for $650 or $750 per month, including space rent of $350 per month. (*See* Def's Ex D at 1.) Morris testified that many other park owners do not rent because maintenance is expensive. He testified that homeowners in the park are not permitted to rent their homes, which is typical for the industry.

A.     *Plaintiffs' Additional Value Evidence*

Morris presented sales from within the park purchased by third parties. (*See* Ptfs' Ex 3.)

| Sale | Size | Year | Condition | Date | Price | Price per sf | Contract | 2018-19 RMV |
|---|---|---|---|---|---|---|---|---|
| 1 | 1026sf | 1999 | | July 2019 | $17,000 | $16.57 | Yes | $26,840 |
| 2 | 788sf | 1968 | 2011 remodel | 2014, 2019 | $3,000 | $3.81 | | $8,710 |
| 3 | 720sf | 1973 | | 2012, 2014, 2019 | $2,800 | $3.89 | | |
| 4 | 804sf | 1971 | "pretty rough" | April 2019 | $500 | $0.62 | | $2,000 |
| 5 | 924sf | 1972 | "good for age" | 2019 | $8,000 | $8.66 | Yes | $10,040 |
| 6 | 1152sf | 1975 | | November 2015 | $8,000[7] | $6.94 | | $12,290 |
| 7 | 896sf | 1974 | | December 2015 | $3,000 | $3.35 | | $12,550 |
| 8 | 648sf | 1963 | "reasonable" | June 2013 | $2,500 | $3.86 | | $6,020 |
| 9 | 1680sf | 1979 | "good" | April 2014 | $10,000 | $5.95 | | $15,350 |
| 10 | 896sf | 1973 | | January 2012 | $4,000 | $4.46 | | $6,460 |
| 11 | 672sf | 1974 | | June 2011 | $5,500 | $8.18 | | $5,390 |
| 12 | 938sf | 1993 | | August 2010 | $6,343[8] | $6.76 | | $22,580 |
| 13 | 924sf | 1975 | | July 2008 | $6,000 | $6.49 | | $10,400 |
| 14 | | 1967 | | November 2005 | $300 | | | $2,500 |

B.     *Defendant's Value Evidence*

Verdin testified that he is bound to appraise real and personal property accurately in accordance with the real market value standard under ORS 308.205 so he removed non-arm's-length sales from consideration. He did not find Plaintiffs' purchases of the subject properties to be reliable evidence of value because they were virtually unsellable at the time of purchase and Plaintiffs performed work or remodeling following purchase to make them appealing. (*See, e.g.,* Def's Ex A at 1-2.) With respect to other sales from Vista Village, Verdin found them too far

---

[7] Morris testified that he offered $5,000 on this home.

[8] Morris testified that he offered $5,000 on this home.

removed from the January 1, 2018, assessment date. He looked for sales from January 1, 2017, through roughly March 2018.

Verdin performed a sales comparison approach for the single wide homes and a second analysis for the double wide homes. (*See* Def's Exs B-C.) Morris criticized Verdin's sales comparison approaches because three of his sales were seller-carried contract sales. Verdin testified that Defendant does not distinguish between cash and contract sales so long as the sales are between a willing buyer and seller; "a sale is a sale."

    1.    *Single wide homes sales comparison approach*

| Sale | Distance | Size | Actual year | Effect. year | Price | Date | Price per sf | Adj. Price | Adj. Price per sf |
|------|----------|------|-------------|--------------|-------|------|--------------|------------|-------------------|
| 1 | 0.88 miles | 788sf | 1966 | 1966 | $5,000 | 2/18 | $6.35 | $5,000 | $6.35 |
| 2 | 0.88 miles | 1008sf | 1966 | 1980 | $4,000 | 5/17 | $3.97 | $5,800 | $5.75 |
| 3 | 29 miles | 775sf | 1965 | 1965 | $4,500 | 11/17 | $5.81 | $4,500 | $5.81 |
| 4 | 0.88 miles | 624sf | 1970 | 1970 | $7,500 | 9/17 | $12.02 | $7,500 | $12.02 |
| 5 | 3 miles | 924sf | 1994 | 1994 | $20,000 | 11/17 | $21.65 | $19,170 | $20.75 |
| 6 | 3 miles | 1008sf | 1978 | 1978 | $10,000 | 1/17 | $9.92 | $10,000 | $9.92 |

(Def's Ex B.)

Verdin wrote that sale 1 was "very comparable to all subject single wides"; sale 3 was "[v]ery similar to many of the older subject's single wides"; and sale 6 was "very similar to the older non-remodeled subject single wides[.]" (Def's Ex B at 1.) Sale 5 was class 4+ whereas the other sales and the subject properties were all class 4. (*See id.*) In his reconciliation, Verdin found the average price for single wide homes was $10.24 per square foot based on "sales data" and $13.45 per square foot "on the assessment summary of all single wides." (*Id.*) The data reported reveals an average adjusted price of $10.10 per square foot for all the single wide homes and an average of $7.48 per square foot for the homes built before 1976. (*See id.*)

/ / /

/ / /

2. *Double wide homes sales comparison approach*

| Sale | Distance | Size | Actual year | Effect. year | Price | Date | Price per sf | Adj. Price | Adj. Price per sf |
|------|----------|------|-------------|--------------|--------|-------|--------------|------------|-------------------|
| 1 | 3 miles | 1486sf | 1989 | same | $25,000 | 5/17 | $16.82 | $25,000 | $16.82 |
| 2 | 0.88 miles | 1227sf | 1976 | same | $15,000 | 5/17 | $12.22 | $15,000 | $12.22 |
| 3 | 26 miles | 1647sf | 1984 | same | $18,000 | 3/18 | $10.93 | $18,000 | $10.93 |
| 4 | 26 miles | 1215sf | 1993 | same | $22,000 | 3/18 | $18.11 | $22,000 | $18.11 |
| 5 | 26 miles | 1152sf | 1978 | same | $14,500 | 10/17 | $12.59 | $14,500 | $12.59 |
| 6 | 26 miles | 1424sf | 1972 | same | $17,000 | 6/17 | $11.94 | $17,000 | $11.94 |

(Def's Ex C.)

Verdin wrote that the first four sales were comparable to the subject properties. (*See*

Def's Ex C at 1.) Sale 5, following the death of the homeowner, was low for the area. (*See id.*)

Sale 6 was a good comparable to the older subject properties because it was dated with many

original features. (*See id.*) All Verdin's comparable sales were class 5 or 5- whereas the subject

properties are class 4 to 5. (*See id.*) In reconciliation, Verdin found a price range of $13.68 to

$14.50 per square foot. (*See id.*) The average adjusted price was $13.77 per square foot with an

average adjusted price of $14.61 per square foot for homes built after 1976. (*See id.*)

3. *Income approach*

Verdin testified that he performed an income approach analysis only for informational

purposes and to provide additional support for the sales comparison approach. (*See* Def's Ex D.)

He used Plaintiffs' actual rental rates, an expense ratio of 50 percent, and a capitalization rate of

10 percent for a value of $18,000 for single wide homes and $24,000 for double wide homes.

(*See id.*)

II. ANALYSIS

The issue before the court is the 2018-19 real market values of the subject properties.

Manufactured homes are subject to ad valorem property taxes. *See Gall v. Dept. of Rev.*, 337 Or

427, 98 P3d 390 (2004). "Real market value is the standard used throughout the ad valorem

statutes except for special assessments." *Richardson v. Clackamas County Assessor,* TC–MD 020869D, WL 21263620 at \*2 (Or Tax M Div Mar 26, 2003). "Real market value" is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).[9] The assessment date for the 2018-19 tax year was January 1, 2018. ORS 308.007; ORS 308.210.

Real market value "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). The three approaches to value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308-0240(2)(a)[10]; *see also Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003). Although all three approaches must be considered, all three approaches may not be applicable in each case. *Id*. Here, the parties each presented evidence of comparable sales. Although Defendant presented an income approach, Verdin assigned no weight to that approach so the court will not consider it in its analysis. "As has often been said, [real market value] is a range of value, rather than an absolute. *Price v. Dept. of Rev.*, 7 OTR 18, 25 (1977).

As the party seeking affirmative relief, Plaintiffs bear the burden of proof by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive fails to meet the burden of proof. *See Reed v. Dept. of Rev.*, 310 Or 260, 265 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

---

[9] The court's references to the Oregon Revised Statutes (ORS) are to 2017.
[10] Oregon Administrative Rule (OAR).

A.      *Sales of the Subject Properties*

A "recent, voluntary, arm's length" sale of the subject property between "a buyer and seller, both of whom are knowledgeable and willing" is important in determining the subject property's real market value. *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). "In the absence of data indicating that 'the price paid was out of line with other market data material * * * [a recent sale is] one of the best and most satisfactory standards for the estimation of actual value although, admittedly, it is not conclusive.' " *Ernst Bros. Corp. v. Dept. of Rev.*, 320 Or 294, 300, 882 P2d 591 (1994) (citation omitted). "This court has been reluctant to consider 'foreclosure' sales" as persuasive evidence of real market value "because such sales 'may well involve an element of compulsion on the part of the seller.' " *Voronaeff v. Crook County Assessor,* TC–MD 110361C, WL 1426847 at *4 (Or Tax M Div Apr 25, 2012) (citations omitted).

Here, Plaintiffs presented evidence of sales of the subject properties. For several reasons the court finds it is unable to rely on those sales as real market value evidence. First, most of the sales are not "recent" with respect to the January 1, 2018, assessment date. All but two of the sales occurred between 2007 and 2016. Second, numerous sales were distressed, including auction sales following foreclosure or repossession following default on a contract, suggesting that such sales were not voluntary. Third, as Defendant noted, Plaintiffs performed work on most of the homes following purchase, thereby increasing their value. On the whole, sales of the subject properties are not persuasive evidence of real market value in this case.

B.      *Sales Comparison Approach*

"In utilizing the sales comparison approach[,] only actual market transactions of property comparable to the subject, or adjusted to be comparable, may be used." OAR 150-308-

0240(2)(c). "The court looks for arm's length transactions of property similar in size, quality, age and location * * * in order to determine the real market value" of the subject property. *Richardson*, 2003 WL 21263620 at *3.

Plaintiffs presented 14 sales from within Vista Village park, indicating a price per square foot of $0.62 to $16.57 per square foot; excluding the highest and lowest sale, Plaintiffs' sales ranged from $3.35 to $8.66 per square foot. Plaintiffs did not identify any sales from 2017 or 2018; all the sales occurred between November 2005 and November 2015 or in 2019. Plaintiffs did not make any adjustments to the sales for age, condition, or other features. For those reasons, the court finds Plaintiffs' comparable sales do not provide reliable value evidence.

Defendant presented two sets of comparable sales: one for single wide homes and one for double wide homes. Upon consideration, the court finds that some of the subject properties are overstated on the 2018-19 tax roll based on the values indicated by Defendant's sales comparison approaches. Although the court received considerable detail about the subject properties and other manufactured homes, the court was unable to discern how many of those details other than age impacted real market value. Most of Plaintiffs' single wide home purchases ranged from $1,000 to $3,000. The sales below $1,000 were for the oldest homes built between 1965 and 1971. The sales over $3,000 were a 1978 and 1995-built home, though a seemingly similar 1978-built home sold for $1,650. Plaintiffs' double-wide home sales clustered around $5,000. The higher and lower-priced sales defy any clear pattern. For instance, Plaintiffs purchased a 1990-built home for $1,500 and a 1980-built home for $7,500. Morris testified that 1976 was a relevant year because manufactured homes became subject to HUD standards in that year.

The court finds that the 2018-19 real market value of the single wide homes built before 1976 was $7.50 per square foot and the value of the double wide homes built before 1976 was

$12 per square foot. Additionally, the court found that two 1981-built homes were out of line with market evidence: Account 147658 is a 728-square foot single wide home assigned a value of $12,280, or $16.87 per square foot. The court finds that a price of $10 per square foot or $7,280 is indicated. Account 146103 is a 1,456-square foot double-wide home assigned a value of $28,870, or $19.83 per square foot. The court finds that a price of $14.50 per square foot or $21,112 is indicated. The court's real market value findings are summarized below.

| Account | Site | Size[11] | Year built | 2018-19 roll RMV | Price per sf | 2018-19 new RMV |
|---|---|---|---|---|---|---|
| 162490 | 64 | S 924sf | 1975 | $10,620 | $7.50 | $6,930 |
| 123949 | 16 | S 924sf | 1974 | $7,820 | $7.50 | $6,930 |
| 119428 | 22 | S 854sf | 1971 | $12,610 | $7.50 | $6,405 |
| 123970 | 57 | S 470sf | 1965 | $11,360 | $7.50 | $3,525 |
| 146663 | 89 | S 924sf | 1975 | $11,290 | $7.50 | $6,930 |
| 144896 | 57 | S 756sf | 1967 | $15,730 | $7.50 | $5,670 |
| 147658 | 77 | S 728sf | 1981 | $12,280 | $10 | $7,280 |
| 148071 | 80 | S 924sf | 1974 | $10,260 | $7.50 | $6,930 |
| 128526 | 29 | S 840sf | 1973 | $7,010 | $7.50 | $6,300 |
| 149121 | 65 | S 924sf | 1975 | $11,120 | $7.50 | $6,930 |
| 128633 | 60 | S 840sf | 1973 | $15,270 | $7.50 | $6,300 |
| 128610 | 78 | S 672sf | 1971 | $13,250 | $7.50 | $5,040 |
| 151428 | 58 | S 576sf | 1974 | $13,120 | $7.50 | $4,320 |
| 124029 | 68 | D 1344sf | 1975 | $20,010 | $12 | $16,128 |
| 164624 | 75 | D 1120sf | 1967 | $16,120 | $12 | $13,440 |
| 163649 | 25 | D 1200sf | 1971 | $22,800 | $12 | $14,400 |
| 163650 | 54 | D 1536sf | 1975 | $22,230 | $12 | $18,432 |
| 128542 | 47 | D 960sf | 1973 | $14,670 | $12 | $11,520 |
| 146103 | 62 | D 1456sf | 1981 | $28,870 | $14.50 | $21,112 |

With respect to the remaining accounts, the court finds that the 2018-19 tax roll real market values are in line with the values indicated by Defendant's sales comparison approaches.

## III.  CONCLUSION

Upon careful consideration, the court finds that the 2018-19 real market value of 19 of the subject properties should be reduced. The 2018-19 real market values of the other 21 subject properties are sustained. Now, therefore,

---

[11] "S" refers to single-wide and "D" refers to double-wide.

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part and denied in part.

Dated this ____ day of February 2020.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on February 14, 2020.*